UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : |
| | : Case No: 21-CR-161 RBW |
| DUSTIN BYRON THOMPSON and | : |
| ROBERT LYON, | : |
| | : |
| Defendants. | : |

## GOVERNMENT'S MOTION IN LIMINE TO ADMIT EVIDENCE UNDER FEDERAL RULE OF EVIDENCE 404(b)

Defendant Dustin Thompson is currently charged by indictment with a variety of crimes arising out of his participation in the January 6, 2021 riot at the U.S. Capitol building. The government submits this motion and notice of its intent to use two groups of evidence pursuant to Federal Rule of Evidence 404(b).

First, the government intends to introduce the defendant's prior arrest for criminal trespassing under Ohio state law; the disposition of that arrest; Thompson's letter of apology to state arresting officers, if the government obtains it prior to trial; and Thompson's communications with his co-defendant about that charge and its disposition. Each of those is admissible under Rule 404(b) to prove Thompson's knowledge and intent on January 6, 2021.

Second, the government hereby provides notice that it may introduce written statements or images sent by the defendant to his co-defendant, Robert Lyon, before January 6, 2021 that relate to the defendant's conduct or state of mind on January 6, 2021. These statements have been produced in discovery, and span from December 25, 2020 through January 6, 2021.[1] These

---

[1] The government also today provided a broader notice to defense counsel that it may offer certain

1

statements are offered as direct evidence of Thompson's knowledge, intent, and motive to commit the charged offenses and thus are not "other crimes, wrongs, or acts" under Rule 404(b). Regardless, the evidence would be admissible under Rule 404(b) for the same reason—they are evidence of Thompson's knowledge, intent, and motive—and thus the government moves for their admission and provides this notice out of an abundance of caution, in the event the statements are deemed prior acts of the defendants.[2]

I.      **FACTUAL BACKGROUND**

      A.      **Thompson's arrest for trespassing**

On June 20, 2020, defendant Dustin Thompson and his co-defendant Robert Lyon were arrested while exiting an Ohio state nature preserve. According to the arrest report, after 9:00 p.m., Mr. Thompson and Mr. Lyon were seen hiking out of a state park that was closed. They were issued citations for criminal trespass.

On July 29, 2020, Thompson texted Lyon: "For the record this is the charge. And me personally am not guilty." Thompson accompanied that text with the following photograph, highlighted by Thompson, of the Ohio statute they were alleged to have violated:

---

other statements of the defendant under Rule 404(b).

[2] If the evidence discussed in this motion is deemed inadmissible under Rule 404(b), the government reserves the right to request that the Court permit the government to introduce such evidence should defense counsel or the defendant open the door to its admission, whether in opening statement, the questioning of witnesses, or otherwise.



On September 28, 2020, Thompson resolved his citation by agreeing to enter a diversion program in which he paid a diversion fee of $250, completed 10 hours of community service, and was required to write a letter of apology to Ohio Department of Natural Resources officers.

That same day, Thompson texted Lyon: "Got the same sentence but got FastTracked the f*** out out [sic] there.  What a joke."  He later texted: "Nm sarah [Thompson's wife] said there different i dont have probation n my record will be expunged." And: "Did the probation guy tell u dismissal and expunged after u do the shit"?  Lyon replied: "Yeah I signed diversion plan" and

"It wont be on record". Thompson replied: "Mines only till 12/28/20. Yeah so f*** it ill write ur apology letter."

Thompson later texted Mr. Lyon the following in a series of texts: "Yeah they can't even identify the property owner or produce an injured party. We can't tell you who you trespassed but it was the state of Ohio. A state trespassing a person born in the state n raised n the state n still living in the state. Sorry national forest rangers. All my love. (Picture of my butthole)".

The government does not currently have in its possession the apology letter written and submitted by Mr. Thompson to the state arresting officers.

B. **Thompson's prior communications**

In the two weeks leading up to January 6, 2021, Thompson texted his co-defendant Lyon the following statements or images:

- On December 25, 2020, he texted Lyon this image:



- On December 27, 2020, he texted Lyon this image, adding the words: "Best news":

> The Senate will start the process for a vote that increases checks to $2,000, repeals Section 230, and starts an investigation into voter fraud.

- On December 30, 2020, he texted this image, which Thompson accompanied with the text "Definitely need more ammo":



- On January 5, 2021, he texted this image, with the text "Bus leaves round 10ish":



- On January 5, 2021, he sent an image via text that included the following:



- Later on January 5, 2021, he sent an image via text that included the following:

6



**BREAKING: Directions To DC In Advance Of Massive Trump "Stop The Steal" Rally Are Suddenly "NOT AVAILABLE" On Apple Maps**

By Patty McMurray
Published January 5, 2021 at 3:54pm
773 Comments

f Share (810)

**100 Percent Fed Up** – As many as two million Americans are expected to descend on our nation's Capitol in Washington DC tomorrow for a pro-Trump, "Stop the Steal" rally. But what happens in this day and age, when paper maps are obsolete, and Apple Maps is allegedly blocking directions to Washington DC for millions of users?

Is this an accident–or just another "glitch," like

- Also on January 5, 2021, he sent an image via text that included the following:



7

In addition, Thompson and Lyon texted each other from January 3, 2021 through January 5, 2021, about the upcoming rally in Washington, D.C. on January 6, 2021, and about the logistics of traveling to Washington, D.C.

On January 6 itself, Thompson, Lyon, and Thompson's wife texted one another about Thompson's and Lyon's plans, whereabouts, intent, and conduct on that day.

## II. GENERAL LEGAL STANDARD AND PRINCIPLES

Federal Rule of Evidence 404(b)(2)(A) requires that the government must provide "reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and (B) do so before trial." Rule 404(b) provides that evidence of "other crimes, wrongs, or acts" is not admissible to prove a defendant's character, but is admissible for any non-propensity purpose, including motive, intent, plan, knowledge, and absence of mistake. *See United States v. Bowie*, 232 F.3d 923, 926, 930 (D.C. Cir. 2000) (citing Fed. R. Evid. 404(b)). As the United States Court of Appeals for the D.C. Circuit has instructed, Rule 404(b) is a rule of "inclusion rather than exclusion." *Bowie*, 232 F.3d at 929. Specifically, "[a]lthough the first sentence of Rule 404(b) is 'framed restrictively,' the rule itself 'is quite permissive,' prohibiting the admission of 'other crimes' evidence 'in but one circumstance' — for the purpose of proving that a person's actions conformed to his character." *Id.* at 929-30 (quoting *United States v. Crowder,* 141 F.3d 1202, 1206 (D.C. Cir. 1998) (*en banc*) ("*Crowder II*")); *accord United States v. Cassell*, 292 F.3d 788, 792 (D.C. Cir. 2002) ("[A]ny purpose for which bad-acts evidence is introduced is a proper purpose so long as the evidence is not offered *solely* to prove character") (quoting *United States v. Miller*, 895 F.2d 1431, 1436 (D.C. Cir. 1990) (emphasis in original)).

There is a two-pronged test for determining whether evidence of prior crimes is admissible

8

under Rule 404(b). First, the evidence must be "probative of a material issue other than character." *Miller*, 895 F.2d at 1435 (citation omitted). Second, the evidence is subject to the balancing test of Federal Rule of Evidence 403, which renders it inadmissible only if the prejudicial effect of admitting the evidence "substantially outweighs" its probative value. *Id.* Furthermore, it is not enough that the evidence is simply prejudicial; the prejudice must be "unfair." *Cassell*, 292 F.3d at 796 (quoting *Dollar v. Long Mf'g, N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977) for the proposition that "[v]irtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair.'"); *United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) ("[T]he Rule focuses on the danger of *unfair* prejudice, and gives the court discretion to exclude evidence only if that danger *substantially* outweigh[s] the evidence's probative value." (citations and punctuation omitted) (emphasis in original)).

Admission of Rule 404(b) evidence is permitted in the government's case-in-chief. Specifically, the government is entitled to anticipate the defendant's denial of intent and knowledge and to introduce similar act evidence as part of its case-in-chief. *See United States v. Inserra*, 34 F.3d 83, 90 (2d Cir. 1994) ("[Rule 404(b) other crimes evidence] is admissible during the government's case-in-chief if it is apparent that the defendant will dispute that issue"); *United States v. Lewis*, 759 F.2d 1316, 1349 n.14 (8th Cir. 1985) ("It was not necessary for the government to await defendant's denial of intent or knowledge before introducing [Rule 404(b) other crimes] evidence; instead the government may anticipate the defense and introduce it in its case-in-chief"); *United States v. Bussey*, 432 F.2d 1330, 1333 n.13 (D.C. Cir. 1970) (noting that Rule 404(b) other crimes evidence to prove identity and to prove that prior and subsequent offenses are so identical as to mark them as handiwork of the defendant should be introduced in the government's case-in-

chief).

Some evidence that is "intrinsic" to the government's case is not Rule 404(b) evidence at all. "In other words, Rule 404(b) only applies to truly 'other' crimes and bad acts; it does not apply to 'evidence . . . of an act that is part of the charged offense' or of 'uncharged acts performed contemporaneously with the charged crime . . . if they facilitate the commission of the charged crime." *United States v. McGill*, 815 F.3d 846, 879 (D.C. Cir. 2016) (quoting *Bowie,* 232 F.3d at 929). "Notably, 'intrinsic' evidence of a charged offense will always satisfy the requirements of Rule 404(b), thus the distinction [between intrinsic and 'other' acts evidence] serves only to 'relieve the prosecution of Rule 404(b)'s notice requirement and the Court of its obligation to given an appropriate limiting instruction upon defense counsel's request.'" *United States v. Edwards*, 889 F. Supp. 2d 47, 49 (D.D.C. 2012) (quoting *Bowie*, 232 F.3d at 927).

### III. ARGUMENT

Each of the two categories of evidence described below would be offered by the government to prove Thompson's knowledge, motive, or intent to commit the charged crimes on January 6, 2021. Thompson has indicated that he intends to potentially contest those elements at trial, so the government anticipates introducing such evidence in its case in chief.

#### A. Thompson's criminal trespass arrest and surrounding circumstances are admissible to show Thompson's knowledge and intent on January 6, 2021.

In this case, evidence of the facts surrounding the defendant's prior arrest for criminal trespassing under Ohio state law; the disposition of that arrest; Thompson's letter of apology to state arresting officers; and Thompson's communications with his co-defendant about that charge and its disposition are all admissible under Rule 404(b) to prove Thompson's knowledge and intent on January 6, 2021.

Mr. Thompson is charged with six crimes that relate to his criminal trespass on U.S. Capitol grounds on January 6, 2021. Count One, the lead felony charge under 18 U.S.C. § 1512(c)(2), requires that Mr. Thompson have acted "corruptly" when he entered the Capitol grounds and obstructed and impeded the congressional certification of the 2020 election. 18 U.S.C. § 1512(c)(2). Count Four, the misdemeanor charge under 18 U.S.C. § 1752(a)(1), requires proof that Thompson "knowingly" "enter[ed] or remain[ed] in a restricted building or grounds"—in this case the restricted portion of the U.S. Capitol grounds on January 6, 2021. Count Five, alleging a violation of 18 U.S.C. § 1752(a)(2), similarly requires proof that Thompson engaged in certain conduct in a restricted building or grounds and "with intent to impede or disrupt the orderly conduct of Government business or official functions." *See* Dkt. 8 at 2-3. Finally, the two misdemeanor charges—Counts Six and Seven—alleging violations of 40 U.S.C. § 5104(e)(2) require proof that Thompson "willfully and knowingly" engaged in certain conduct in a "Capitol Building[]". *See* Dkt. 8 at 3.

Mr. Thompson's prior arrest for criminal trespass and its disposition—which occurred between just three and seven months prior to January 6, 2021—are relevant to Mr. Thompson's knowledge and intent to commit these five offenses. Indeed, the specific charge on Mr. Thompson's citation required that he have "[k]nowingly enter[ed] or remain[ed] on the land or premises of another, the use of which is lawfully restricted to certain persons, purposes, modes, or hours"—an element strikingly similar to Section 1752(a)(1)'s requirement that the defendant have knowingly "enter[ed] or remain[ed] in any restricted building or grounds" on January 6, 2021. 18 U.S.C. § 1752(a)(1). Mr. Thompson further indicated, in his text messages, that he had reviewed that statutory language. Mr. Thompson's arrest and its disposition, along with his

11

communications, are thus circumstantial proof that Thompson was aware that public land could be "restricted" in its use, and that entering or remaining on restricted public land was criminal misconduct. Mr. Thompson's agreement to write an apology letter to the arresting officers is additional circumstantial proof of Thompson's awareness of these things.[3]

To be sure, Thompson states in his messages that in his view he is "not guilty" of the offense; and it appears to have been resolved with a plea of *nolo contendere* (though an apology letter was required). But that does not affect the relevance of this evidence to Thompson's intent. Whether he believed he was guilty or not, the fact that Thompson was arrested and charged would have impressed upon him that public land (like the Capitol grounds) can be restricted to the public, and that one can be arrested and charged with a criminal offense for trespassing in such restricted areas. That is circumstantially relevant to Thompson's knowledge and intent in entering restricted portions of the public grounds on which the U.S. Capitol sits on January 6, 2021. *See, e.g.*, *Bowie*, 232 F.3d at 930 ("Evidence that [the defendant] possessed and passed counterfeit notes on a prior occasion was relevant because it decreased the likelihood that [the defendant] accidentally or innocently possessed the counterfeit notes [in the charged incident]."). That is especially so given that, according to his text messages, Thompson's probationary period for the Ohio trespass offense was set to end just nine days before January 6, 2021.

Evidence admissible under Rule 404(b) is, of course, subject to the restrictions of Rule 403. *See United States v. Moore*, 732 F.2d 983, 987 (D.C. Cir. 1984). In this case, the probative value

---

[3] The government does not currently possess a copy of the apology letter, but may obtain it prior to trial. This motion provides notice of the government's intent to use the contents of that letter as Rule 404(b) evidence.

of the government's proffered 404(b) evidence is not substantially outweighed by potential prejudice to the defendant. Of course, in theory, any 404(b) evidence "raises the danger that the jury will improperly 'conclude that because [the defendant] committed some other crime, he must have committed the one charged in the indictment.'" *United States v. Douglas*, 482 F.3d 591, 601 (D.C. Cir. 2007) (quoting *Crowder II*, 141 F.3d at 1210). But that potential prejudice is not unique to this case—where the government has shown a permissible non-propensity purpose. Potential prejudice is endemic to all Rule 404(b) evidence, yet prejudice in that attenuated sense cannot justify a *per se* rule of exclusion. *See Crowder II*, 141 F.3d at 1210. The defense must instead show "compelling or unique" evidence of prejudice, *United States v. Mitchell*, 49 F.3d 769, 777 (D.C. Cir. 1995), distinct from the probative value of the evidence and distinct from the intrinsic prejudicial potential of any Rule 404(b) evidence. The D.C. Circuit has consistently chosen to minimize the residual risk of prejudice not by excluding Rule 404(b) evidence, but by issuing limiting instructions to the jury. *See, e.g.*, *Douglas,* 482 F.3d at 601 (emphasizing the significance of the district court's instructions to the jury on the permissible and impermissible uses of the evidence); *Pettiford*, 517 F.3d at 590 (same); *Crowder II*, 141 F.3d at 1210 (stating that mitigating instructions to the jury enter into the Rule 403 balancing analysis).

Here, any concern about prejudice from the jury improperly considering this prior offense as propensity evidence is minimized by the fact that identity is not in dispute in this case. Mr. Thompson does not deny that he is the individual who entered U.S. Capitol grounds on January 6, 2021; instead, he intends to raise certain defenses that his conduct is not unlawful. As a result, there would be no prejudice to Thompson even if the jury were to improperly construe this as evidence that it was Thompson who committed the conduct at issue in this case, too. In any

event, as just explained, generalized concerns about the jury impermissibly construing Rule 404(b) evidence as character evidence can be addressed via a limiting instruction and ordinarily do not preclude the use of this type of evidence.

Separate from that generalized concern, unlike a more serious or disturbing crime, Thompson's prior arrest for criminal trespass in a public park does not carry a concern of heightened prejudice or animosity toward the defendant. For all of these reasons, the government should be permitted to present evidence of Thompson's prior trespassing arrest, the circumstances surrounding it, his communications about that arrest and its resolution, and evidence of the resolution of that arrest.

### B. Thompson's communications with Lyon leading up to and on January 6, 2021 are also admissible to show Thompson's knowledge and intent.

The government may also introduce Thompson's communications with Lyon prior to January 4th as evidence of Thompson's knowledge and intent on January 6, 2021. Those statements circumstantially indicate Thompson's view that January 6 involved efforts to "Stop the Steal." They indicate Thompson's hostility toward the incoming administration (*e.g.*, the image of then President-elect Biden with: "Definitely need more ammo") and support for the outgoing administration (*e.g.*, the image of former President Trump with: "Get in, p****, we're making the Universe great again"), along with his interest in voter fraud (*e.g.*, the text regarding the "investigation into voter fraud"). These messages, coming during the two weeks before January 6, 2021, are relevant to proving Thompson's intent and motive on that date. *E.g.*, *United States v. Duran*, 884 F. Supp. 558, 561 (D.D.C. 1995) ("[h]ostility is a paradigmatic motive for committing a crime"); *Moore*, 732 F.2d at 991 ("The intent with which a person commits an act on a given occasion can many times be best proven by testimony or evidence of his acts over a

period of time prior thereto . . . ."). The government views them as inextricably intertwined with Thompson's offense, and thus not "other" acts under Rule 404(b).

But even if those statements are considered prior acts rather than evidence intrinsic to proof of these offenses, the statements are admissible under Rule 404(b) to prove Thompson's intent or motive. *See Duran*, 884 F. Supp. at 561 (admitting prior bad acts indicating hostile relationship toward federal government); *Moore*, 732 F.2d at 987-91 (admitting prior acts as relevant to intent). Because the statements do not involve prior bad acts or criminal conduct, there is, again, little likelihood that a jury would conclude that Thompson having made these statements makes it more likely Thompson was the individual who committed the charged crimes on January 6. Here, "[t]he risk of unfair prejudice . . . is minimized because the only obvious use for the bad acts testimony is the proper use" of showing intent or motive. *Moore*, 732 F.2d at 990. And it "is a sound rule that the balance" of admissibility under Rule 403 "should generally be struck in favor of admission when the evidence," as here, has "a close relationship," temporally and substantively, "to the event charged.'" *United States v. Cooper*, 229 F. Supp. 3d 75, 76 (D.D.C. 2017) (quoting *Cassell*, 292 F.3d at 795).

Finally, Thompson's communications with Lyon between January 3rd and January 5th regarding planning for their January 6th travel, the logistics of traveling to Washington, D.C., are evidence of his travel to the U.S. Capitol on January 6, 2021, and of his intent. Likewise, Thompson's communications with his wife and Lyon on January 6th evidence Thompson's location on that day, his conduct, and his intent, and so are evidence of elements of the charged crimes. In any event, because those communications would not be offered to show Thompson's propensity to commit any crime, much less solely to show propensity, the statements would be

admissible under Rule 404(b) if that rule applies.

## **CONCLUSION**

The government requests that the Court permit at trial the introduction of the evidence described above, pursuant to Federal Rule of Evidence 404(b).

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

*/s/ William Dreher*
WILLIAM DREHER
D.C. Bar No. 1033828
Assistant United States Attorney (Detailed)
700 Stewart Street, Suite 5220
Seattle, WA 98101
(206) 553-4579
william.dreher@usdoj.gov

*/s/ Jennifer M. Rozzoni*
JENNIFER M. ROZZONI
NM Bar No. 14703
Assistant United States Attorney (Detailed)
203 3rd Street, Suite 900
Albuquerque, New Mexico 87102
(505) 350-6818
jennifer.m.rozzoni@usdoj.gov